IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| KEITH O. PALMER § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-05-513 |
| § | |
| ALAN J. PESCH and § | |
| CYNTHIA PESCH, § | |
| § | |
| Defendants. § | |

**ORDER GRANTING DEFENDANTS ALAN J. PESCH AND CYNTHIA PESCH'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This case arises out of an alleged implied contract between Plaintiff Keith O. Palmer ("Plaintiff") and Defendants Alan J. Pesch and Cynthia Pesch (collectively "Defendants"). Now before the Court is Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2) for Lack of Personal Jurisdiction. For the reasons stated below, the Court finds that it lacks personal jurisdiction over both Alan and Cynthia Pesch, and therefore Defendants' Motion is hereby **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.[1]

**I. Background**

In this case, Plaintiff seeks recovery based on an implied contract that arose in connection with the sale of Ship Analytics, Inc. ("SA") to L-3 Communications Corporation ("L-3") on December 19,

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

2002. At the time, SA was a Connecticut C Corporation. Alan Pesch owned 66.7% of SA's stock, and Cynthia Pesch owned the remaining 33.3%. Mr. Pesch was the president and CEO of SA. At all relevant times, Plaintiff was employed as a salesman and mid-level manager by SA in its Galveston, Texas office. Plaintiff was primarily responsible for the sale of CRISIS, an emergency management software product sold by SA. In 2002, the year in which the alleged implied contract arose, Plaintiff earned a salary of $90,000 plus one percent commission on his sales.

Plaintiff claims that in early November 2001, Mr. Pesch recruited him to assist in the sale of SA to L-3. He further claims that it was conveyed to him by Mr. Pesch and others that he would be rewarded over and above his normal compensation if the sale occurred. Alan Pesch denies that he ever recruited Plaintiff to assist himself and his ex-wife with the sale of SA personally or otherwise asked Plaintiff to perform any services for them individually.[2] On December 19, 2002, Defendants sold their stock in SA to L-3 for a total consideration in excess of $13,000,000. Almost two years later, in December 2004, Mr. Pesch decided to distribute money to his former SA employees. This employee distribution was funded in part by an earnout payment in 2003 by L-3 to Mr. and Ms. Pesch, and in part by Mr. Pesch's own personal funds.[3] Plaintiff was offered $10,000 as part of this employee distribution. Plaintiff rejected the payment, and in July 2005, initiated this lawsuit contending that he is entitled to fair and substantial compensation from Mr. and Mrs. Pesch for his

---

[2]According to Defendants, an outside consultant, Sam Gejdenson, was hired by SA to assist with the sale to L-3.

[3]The "earnout payments" were additional payments that L-3 was obligated to make to Cynthia and Alan Pesch if Ship Analytics reached certain performance goals for the years 2003, 2004, and 2005, after purchase by L-3.

efforts in 2002 to aid in the sale of SA.[4]  Plaintiff does not allege that he is entitled to a higher percentage of the earnout; his claim is for compensation that is owed independent of the earnout payment.  He contends that "fair and substantial compensation" for his efforts is $200,000.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants seek to dismiss Plaintiff's claims against them for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2).  As nonresidents of Texas, Defendants are subject to personal jurisdiction in this District if: (1) they are amenable to service of process under Texas's long-arm statute, and (2) the exercise of personal jurisdiction over them is consistent with due process.  *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Electrosource, Inc. v. Horizon Battery Techs. Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).  The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business" in Texas.  *See* TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 1997).  The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry.  *See Ruston Gas Turbines, Inc. v. Donaldson* Co., 9 F.3d 415, 418 (5th Cir. 1993); *Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990).

Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry.  First, the Court must conclude that the defendant has "minimum contacts" with the forum state.  *See Int'l Shoe*

---

[4]There is no evidence that Plaintiff ever sought any alleged compensation from Defendants for over two years after the sale of SA.

*Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring a defendant to litigate in the forum does not offend "traditional notions of fair play and substantial justice." *Id. See also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Ruston Gas Turbines*, 9 F.3d at 418.

The "minimum contacts" prong can be satisfied by a finding of either general or specific jurisdiction over a defendant. *See Wilson*, 20 F.3d at 647. A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958)). A defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S. Ct. at 2183 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson*, 20 F.3d at 648. However, it is sufficient for the plaintiff to make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of

the plaintiff.  *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001).

**III.   Analysis**

Plaintiff argues that this court has both specific and general *in personam* jurisdiction over both Mr. and Mrs. Pesch.  The Court respectfully disagrees for the reasons laid out below.

### A.   Personal Jurisdiction Over Alan Pesch

Plaintiff argues that this Court has both general and specific *in personam* jurisdiction over Alan Pesch.  The theory underlying Plaintiff's arguments for both specific and general jurisdiction is that Alan Pesch is the alter ego of SA.  The alter ego argument for general jurisdiction is relatively straightforward: SA operated in TX and was subject to the personal jurisdiction of courts in Texas, and that if SA is Alan Pesch's alter ego, then SA's contacts with Texas are Mr. Pesch's contacts with Texas.  The alter ego argument as it applies to specific jurisdiction is more subtle: Plaintiff argues that this Court has specific jurisdiction over Alan Pesch because he recruited Plaintiff to perform personal services for him.  However, this "recruitment" took place in the course of Plaintiff's employment at SA and while Alan Pesch was acting in his corporate capacity.  Since Alan Pesch was acting in his corporate capacity at the time the alleged implied contract arose, the question of specific jurisdiction also rests on the resolution of whether SA is his alter ego.  Only if that is the case will Alan Pesch's contacts as a corporate officer be imputed to him as an individual.

The general rule is that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). *See* 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §

1069.4, at 186–96 (3d ed. 2002) (stating that federal courts cannot assert personal jurisdiction over individuals whose contacts with the forum state arise while acting as corporate officers, unless the corporate entity can be disregarded). However, "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual...that would not ordinarily be subject to personal jurisdiction in that court when the individual...is an alter ego...of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). *See* Wright & Miller, *supra*, at 196. The underlying theory is that because the corporation and the individual "are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin*, 294 F.3d at 653 (emphasis in original).

The Court considers the totality of the circumstances when resolving the issue of wether an individual is an alter ego of a corporation. *See Gundle Lining Const. v. Adams County Asphalt*, 85 F.3d 201, 209 (5th Cir. 1996). The Fifth Circuit has identified the following factors as relevant in the determination of whether an individual is an alter ego of a corporation: (1) the total dealings of the corporation and the individual; (2) the amount of financial interest the individual has in the corporation; (3) the ownership and control that the individual maintains over the corporation; (4) whether the corporation has been used for personal purposes; (5) whether the individual uses the corporation's property as his own; (6) whether the corporation conducts business other than that of the individual; (7) whether the individual pays the expenses of the corporation; (8) whether the corporation operates with grossly inadequate capital; (9) whether the individual and the corporation file a single tax return; (9) whether the individual and corporation observe corporate formalities; (10) whether the individual and the corporation commingled funds; and (11) whether the corporation paid

the individual's personal obligations. *See id.* at 209; *Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir. 1992) (citing *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985)).

It is undisputed that this Court has *in personam* jurisdiction over SA. Prior to its sale, SA maintained an office in Galveston for a number of years and clearly conducted business in Texas. There is no question that SA purposely availed itself of the benefits of operating in Texas, and had the requisite minimum contacts with Texas. Additionally, it would not offend notions of fair play and substantial justice to have required SA to defend suit in Texas. The critical question in this case is whether SA's minimum contacts with Texas can be imputed to Alan Pesch.

Plaintiff offers two facts in support of his argument that Mr. Pesch established an alter ego relationship with SA. First, that Mr. Pesch used the company for personal purposes. In support of this assertion, Plaintiff has provided an excerpt from Roger Cook's deposition,[5] where he stated as much. Plaintiff's Ex. 2 at p. 35. This excerpt provides no additional information as to how Alan Pesch used the company for personal purposes, how often he did so, or to what degree. The Court cannot discern from one conclusory statement whether Mr. Pesch was merely raiding SA's office supply cabinet or using SA's checkbook as his own. Plaintiff also argues that because Alan Pesch used him and other company employees to assist in the sale of SA to L-3, that this constitutes "personal use." The Court disagrees. A corporation is free to use its employees to assist in the sale of the company, especially where, as in this case, Plaintiff's apparent contribution to the sale was identifying potential purchasers of the product that he was in charge of selling in the normal course of business. Furthermore, all of Plaintiff's efforts were made during the course of his regular working

---

[5]Roger Cook is a former SA executive.

hours.

Additionally, Plaintiff's affidavit suggests that what he was being asked to do was part of his employment obligations rather than in the nature of performing personal services. Plaintiff's affidavit indicates that as a result of his efforts, he expected additional compensation from the company, not Alan and Cynthia Pesch personally. For example, he complains of "uncompensated overtime." The affidavit further suggests that Plaintiff was not assisting in the sale of SA on the side or separately from his regular employment with SA, but that it became a part of his duties as an SA employee. Plaintiff admits that he spent the majority of his working time prior to the completion of the sale "identifying and developing potential purchasers and applications for CRISIS [the product he sold]." The Court finds that this does not constitute the type of "personal use" sufficient to justify a finding that an individual has established an alter ego relationship with a company.[6]

Second, Plaintiff relies upon another statement by Roger Cook in his deposition. Roger Cook stated, "Well, you know, it's awfully hard for me to differentiate between Alan and the company since he was the company." Plaintiff's Ex. 2 at 114. Once again, Plaintiff has provided the Court with a small excerpt from Mr. Cook's deposition without any accompanying context. It would appear from the remainder of the excerpt that Mr. Cook was being asked about Mr. Pesch's contacts with Texas. It is difficult for the Court to discern what is meant by the statement "he was the company." Mr.

---

[6]There is evidence from one of Alan Pesch's affidavits that at times, Alan Pesch or his separate real estate company would hire SA employees to perform services. Mr. Pesch claims that when employees would be hired in this capacity, that such employees were paid personally pursuant to a written agreement, that they filled out separate time cards, and that all such work was documented. Mr. Pesch further stated that such formalities were required because SA was frequently audited by the Department of Defense. Plaintiff has failed to show that this was not the case and that such formalities were not observed. Nor has Plaintiff produced any separate written agreement, time cards, or other documents tending to show that the alleged implied contact was indeed for the performance of personal services to Cynthia and Alan Pesch.

Pesch was the president of the company at the relevant time period in addition to being the majority shareholder. The evidence submitted by all Parties shows that Alan Pesch played an active role in the management and direction of the company, but being president of a company of which you are also a majority shareholder does not automatically render a company one's alter ego. Yet, this is essentially what Plaintiff is asking the Court to find. Plaintiff offers no additional evidence for the Court to consider on this matter other than two conclusory statements, nor has Plaintiff provided any persuasive case law in support of his alter ego theory. The Court finds that this evidence alone fails to demonstrate that Alan Pesch is the alter ego of SA.

Additionally, analysis of the relevant factors identified by the Fifth Circuit also compels the conclusion that SA is not Alan Pesch's alter ego. On the one hand, Alan Pesch had a substantial interest in SA. Together, he and his former wife owned 100% of SA's stock. He also ran the company, serving as president for a number of years. Additionally, Plaintiff claims that Mr. Pesch used the company for personal purposes, the primary purpose being the use of employees to help market and sell the company[7]. On the other hand, there is no evidence of any improper personal use such as using corporate property as personal property or raiding the company coffers. It appears from all accounts that all corporate formalities were observed, that separate books and records were kept, and that there were no commingled funds or bank accounts. The evidence submitted by all Parties demonstrates that SA was a legitimate corporation with legitimate business activities. Historically, SA had between 50 and 150 employees, and it had six offices worldwide. It is undisputed that SA held substantial value, and there is no claim that the company was undercapitalized. There is no

---

[7]As previously stated, the Court finds that using employees of a company to assist in its sale without more does not constitute grounds for establishing an alter ego relationship.

indication that SA was either abused or dominated for personal use. *See Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1202 (S.D. Tex. 1996). The Court also finds it significant that Mr. Pesch was able to sell the company for total consideration in excess of $13 million. It is highly unlikely that he would have been able to find a buyer to pay such substantial consideration for a company that was nothing more than a shell or a means of abusing the corporate privilege. *See id.* The record establishes that SA was a legitimate company and not Alan Pesch's alter ego. The Court cannot disregard the corporate fiction under these circumstances and exercise personal jurisdiction over Alan Pesch for the acts he committed in his corporate capacity, nor can SA's contacts establishing general personal jurisdiction in Texas be imputed to Alan Pesch.

Plaintiff's claim that Alan Pesch is the alter ego of SA must fail. Plaintiff has offered no other basis for the exercise of personal jurisdiction over Alan Pesch, and the Court finds none. Mr. Pesch is a Florida resident and has had no contacts with Texas other than as a corporate officer of SA. Furthermore, given that the Court has determined that Alan Pesch lacks the requisite minimum contacts with Texas, there is no need to examine the second prong of the two-part inquiry of whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158. Plaintiff's claims against Defendant Alan Pesch are hereby **DISMISSED WITHOUT PREJUDICE**.

**B. Personal Jurisdiction Over Cynthia Pesch**

Likewise, the Court finds that it lacks personal jurisdiction over Cynthia Pesch. Plaintiff premises this Court's personal jurisdiction over Cynthia Pesch through Alan Pesch: that Alan was Cynthia's agent for all purposes related to the sale of SA, and therefore all of Alan Pesch's actions during the course of the sale were her actions. It then follows that if SA's contacts with Texas are

Alan's contacts with Texas, they then become Cynthia's contacts with Texas. *See Kim v. Frank Mohn A/S*, 925 F. Supp. 491, 494 (S.D. Tex. 1996) (for purposes of personal jurisdiction, the acts of the agent are the acts of the principal). As previously stated by the Court, Alan Pesch was not the alter ego of SA, and SA's contacts with Texas will not be imputed to Alan Pesch, nor are Alan Pesch's contacts with Texas in his corporate capacity sufficient to subject him to personal jurisdiction as an individual in Texas. If these contacts are not attributed to Alan then there is nothing to attribute to Cynthia through Alan Pesch acting as her agent. Plaintiff has failed to offer any other evidence that Cynthia Pesch, a resident of Connecticut who claims to have never even traveled to Texas, has the requisite minimum contacts with this State.[8] This Court lacks personal jurisdiction over Cynthia Pesch, and therefore, Plaintiff's Claims against Cynthia Pesch are **DISMISSED WITHOUT PREJUDICE**.

IV. **Conclusion**

After careful consideration of the issues before it, the Court finds that it does not possess either specific or general *in personam* jurisdiction over either Alan Pesch or Cynthia Pesch. The Court accordingly hereby **GRANTS** Defendants' Motion to Dismiss on the specific ground that it lacks personal jurisdiction over Defendants, and hereby **DISMISSES WITHOUT PREJUDICE** any and all of Plaintiff's claims against Defendants. Plaintiff is free, of course, to reassert these claims in a court of proper jurisdiction and venue during the applicable limitations period. A Final Judgment will be issued contemporaneously with this Order. Each Party is to bear its own taxable costs and expenses incurred herein to date.

---

[8] Additionally, Cynthia Pesch had no control over the business aspects of SA, nor did she play any personal role in the sale of SA.

**IT IS SO ORDERED**.

**DONE** this 20th day of April, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge